Argued and submitted April 24, reversed May 24, 2000

James SAGER
and John Chase,
*Appellants,*

*v.*

Phil KEISLING
and Walter Huss,
*Respondents.*

(98C-19306; CA A105913)

999 P2d 1235

Margaret S. Olney argued the cause and filed the brief for appellants.

David Schuman, Deputy Attorney General, argued the cause for respondent Phil Keisling. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Terrance McCauley argued the cause for respondent Walter Huss. On the brief was James E. Leuenberger.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

In this case, plaintiffs contend that proposed initiative Measure 2000-12 contains two or more constitutional amendments that must be voted on separately under Article XVII, section 1, of the Oregon Constitution. In the alternative, they contend that the measure constitutes a revision of the constitution, which may not be effected by initiative. Secretary of State Phil Keisling (Secretary) concluded that the measure contains only one constitutional amendment and is not a constitutional revision. The trial court agreed. We conclude that Measure 2000-12 does contain two or more constitutional amendments and consequently do not address whether the measure amounts to a constitutional revision. We therefore reverse.

Measure 2000-12 is similar to the measure that we addressed in *Dale v. Keisling*, 167 Or App 394, 999 P2d 1229 (2000), in that, if enacted, it would eliminate most existing forms of taxation and replace them with a single "gross receipts" tax. But it is not identical to the measure at issue in *Dale*, so we must describe its contents and its effects to determine independently the extent to which it contains more than two constitutional amendments.

Measure 2000-12 is organized into five "paragraphs." The first paragraph would amend the constitution by creating a new article, to be known as Article IX-A, which would consist of ten separate sections. The remaining paragraphs contain mostly administrative and implementation provisions. Section 1 provides:

> "**Revenue to be generated only as provided by this article. Single tax.** The single tax, a gross receipts (flat) tax, shall be the primary means of generating state and local government and district revenue. No tax on real or personal property, income, fee, or other assessment, sales tax, or separately stated tax, or revenue generating mechanism shall exist in the state, except as otherwise expressly provided by this article."

(Boldface in original.) Section 2 sets the tax rate at "2.5% of gross volume of receipts generated and received." The section further provides that the rate may be increased only by a

majority vote of the people, with a majority of the counties casting a majority vote. Section 3 sets forth certain exemptions from the gross receipts tax, including financial institution deposits, interest on deposits, contributions to nonprofit organizations, social security and retirement payments, loan principal payments, insurance claims benefits, and gifts. Section 4 describes who is required to pay the gross receipts tax. It specifies that landlords receiving rents, financial institutions and other lenders receiving interest and fees on loans or other services, insurance companies receiving premiums, brokers receiving commissions, businesses receiving consideration for goods or services, persons selling property, and barter participants all must pay the tax on the gross volume of consideration received. Section 5 provides that the enactment of the measure does not prevent revenue from being derived from, among other things, state or district user charges, tuition, federal revenue sharing, the common school fund, workers' compensation insurance, unemployment insurance, timber sales from public lands, fines, penalties, and forfeitures, provided that user charges do not exceed the cost of providing public services. Section 6 establishes a formula for the distribution of revenues generated by the gross receipts tax. It requires the State Treasurer to distribute revenue to the state itself and to any "district jurisdiction thereof" in an amount "equal to the average of the last three years revenue receipts received from taxes, fees, and assessments or other revenue mechanisms prohibited by this article," subject to permissible adjustments for changes in population, school enrollment, and the like. It further provides that the people may, upon a majority vote, dedicate a certain percentage of the revenues to highway, bridge, and road construction or dedicate a percentage of the revenues to reducing tuition for resident students at state universities. Section 6 also spells out what happens in the event of a revenue shortfall. In that event, the legislature would be permitted to refer to the people a tax rate increase. If the people do not approve the increase, Section 6 would require state and local legislative authorities to reduce their budgets to match revenues available,

"provided that police, fire protection, highways, schools, state security, and corrections are declared to be essential

services that shall not be subject to budget reduction unless and until government revenue is less than the combined budgets of such services, in which case all budgets shall be proportionately reduced to match revenues."

Section 7 prohibits the state or any local authority from incurring any indebtedness. Section 8 provides that, when federal law requires the imposition of a state tax or fee as a condition for receiving a federal benefit, the legislature is authorized to refer the acceptance of the benefit and the imposition of the tax to the people, provided that the acceptance includes a memorial to Congress seeking a waiver or repeal of the condition. Section 9 authorizes the legislature to enact remedies for failure to pay the gross receipts tax. Section 10 provides that the new Article IX-A may be amended only by a vote of the people, subject to a double-majority requirement, that is, by a majority of the votes cast in a majority of the counties.

Chief petitioner Walter Huss filed Measure 2000-12 with the Secretary, who then issued a notice seeking public input to assist in the review of the measure for compliance with constitutional requirements. Plaintiffs submitted comments in which they suggested that the measure contained more than two constitutional amendments or amounted to a constitutional revision. The Secretary disagreed and approved the form of the measure.

Plaintiffs then initiated this action for judicial review of an order in other than a contested case, ORS 183.484, and of the Secretary's decision under ORS 246.910. They named as defendants the Secretary and Huss. Plaintiffs moved for summary judgment. The Secretary did likewise, and Huss joined the Secretary's motion. The trial court denied plaintiffs' motion, granted the Secretary's, and entered judgment declaring that Measure 2000-12 contains only one constitutional amendment and does not amount to a constitutional revision. On appeal, plaintiffs argue that the trial court erred in concluding that the measure contains only one constitutional amendment and that it does not amount to a constitutional revision.

As we explained in *Dale*, whether a proposed initiative measure contains more than two amendments to the

constitution under Article XVII, section 1, is determined by reference to a three-part inquiry. First, we inquire whether the enactment of the measure would effect two or more "changes" to the constitution. Second, we ask whether those changes would be "substantive" in nature. Third, we ask whether those changes are "closely related." 167 Or App at 398-99.

We begin with whether the enactment of Measure 2000-12 would effect two or more changes to the constitution. The parties disagree about the scope of the changes that the enactment of the measure would require, but they agree that it would require multiple changes to the existing constitution.

If enacted, Measure 2000-12 would require at least the following changes to the Oregon Constitution:

1. Existing Article IV, section 1(4)(d), establishes the requirements for enacting laws—including changes to the tax structure—by initiative. Paragraph 1, section 2, of Measure 2000-12 would alter that provision by eliminating the possibility of voter-initiated taxation other than the gross receipts tax and by imposing a double-majority requirement on the enactment of any changes to the rate of the gross receipts tax.

2. Existing Article VI, section 10, provides that counties have home rule power, including the power to levy taxes. Paragraph 1, section 1, of Measure 2000-12 effectively would repeal that portion of the constitution.

3. Existing Article IX, section 6, requires the legislature to levy taxes to eliminate deficits. Paragraph 1, section 1, of Measure 2000-12 effectively would repeal that provision.

4. Existing Article XI, sections 1(c), 11(3)(c)(A), and 11(4)(a)(A), authorize the legislature, local taxing districts, and school districts respectively to enact ad valorem property taxes in certain circumstances. Paragraph 1, section 1, of Measure 2000-12 effectively would repeal that authority.

5. Existing Article XI, section 10, authorizes counties to incur bonded indebtedness. Existing Articles XI-A and XI-D through XI-J similarly authorize the legislature to incur

bonded indebtedness for certain purposes. Paragraph 1, section 6, of Measure 2000-12 effectively would repeal that authority.

There can be no question but that the enactment of Measure 2000-12 would effect more than two changes to the Oregon Constitution.

■ The next question is whether those changes are substantive in nature. The parties agree that the changes that we have described are substantive, and we agree. None is merely formal or speculative. Each would alter the existing constitution in a substantial way.

That leaves whether the changes are "closely related." Plaintiffs argue that they are not, because they would affect the rights and duties of different persons and government authorities. The Secretary argues that the changes required by the enactment of Measure 2000-12 are "perhaps closely related," because they all concern government authority to raise revenue through taxation and limitations on its authority to spend that revenue.

■ Article XVII, section 1, is not satisfied merely by proposing a subject that arguably covers all of the provisions of a proposed amendment. Virtually any proposed amendment, no matter how complicated, plausibly can be described by a single subject. As the Supreme Court made clear in *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998), such an approach, while arguably sufficient to satisfy the single-subject requirements of Article IV, section 1(2)(d), does not satisfy the more demanding requirements of Article XVII, section 1. "[T]he separate-vote requirement of Article XVII, section 1," the court held, "imposes a *narrower* requirement than does the single-subject requirement of Article IV, section 1(2)(d)." *Id.* at 276 (emphasis in original).

In *Dale*, we held that the multiple changes produced by the enactment of a measure are "closely related" if a vote in favor of one necessarily implies a vote in favor of the others. *Dale*, 167 Or App at 401. That is consistent with the Supreme Court's conclusion that Article XVII, section 1, was intended to "ensure that voters will not be compelled to vote upon multiple * * * constitutional changes in a single vote."

*Armatta*, 327 Or at 275. Conversely, if a vote in favor of one amendment does not necessarily imply a vote in favor of another, the danger of "log-rolling" is present, and such changes would not be closely related, regardless of whether those changes plausibly could be regarded as reflecting a single subject for purposes of Article IV, section 1(2)(d). *Dale*, 167 Or App at 401.

■ In this case, Measure 2000-12 would alter the authority of the people to enact legislation; it would limit the authority of the people to enact tax measures generally and increases in the gross receipts tax specifically. At the same time, the measure would eliminate the authority of state and local governments to incur bonded indebtedness. It also would alter the extent to which the legislature could accept federal benefits conditioned on the enactment of certain taxes. Those changes are not "closely related." A vote in favor of altering the authority of the people to enact legislation does not necessarily imply a favorable vote on the power of state and local governments to incur indebtedness. And a vote in favor of limiting the legislature's authority to receive federal benefits implies nothing about a vote on the authority of the people to enact laws by initiative or the power of state and local governments to incur indebtedness. Those examples are sufficient to establish that Measure 2000-12 would effect more than two substantive changes that are not closely related.

We therefore conclude that the trial court erred in denying plaintiffs' summary judgment motion and instead granting the Secretary's motion. Because we reach that conclusion under Article XVII, section 1, we do not address plaintiffs' contention that Measure 2000-12 is a proposed constitutional revision.

Reversed.